**ACKERMAN & TILAJEF, P.C.**
Craig J. Ackermann (SBN 229832)
cja@ackermanntilajef.com
1180 South Beverly Drive, Suite 610
Los Angeles, California 90035
Telephone: (310) 277-0614
Facsimile: (310) 277-0635

**MELMED LAW GROUP, P.C.**
Jonathan Melmed (SBN. 290218)
jm@melmedlaw.com
1180 South Beverly Drive, Suite 610
Los Angeles, California 90035
Telephone: (310) 824-3828
Facsimile: (310) 862-6851

**WINSTON LAW GROUP, P.C.**
David S. Winston (SBN 310667)
david@employmentlitigators.com
1180 South Beverly Drive, Suite 610
Los Angeles, CA 90035
Telephone: (424) 288-4568
Facsimile: (424) 532-4062

Attorneys for Plaintiffs and the putative settlement class

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION

| | |
|---|---|
| HENRY SUMLIN and BRIAN LEE, individually and on and behalf of all others similarly situated,<br><br>              Plaintiffs,<br>v.<br><br>BNSF RAILWAY COMPANY, and DOES 1 to 10,<br><br>              Defendants. | Case No. EDCV 17-2364-JFW (KKx)<br><br>**NOTICE OF MOTION AND MOTION FOR ORDER GRANTING PRELIMINARY APPROVAL OF PARTIAL CLASS ACTION SETTLEMENT**<br><br>Judge: Hon. John F. Walter<br>Hearing Date: January 29, 2018 |

**NOTICE IS HEREBY GIVEN** that, on January 29, 2018, at 1:30 p.m., or as soon thereafter as the matter may be heard, in Courtroom 7A of the United States District Court for the Central District of California before the Honorable John F. Walter pursuant to Fed. R. Civ. P. 23(e), Plaintiff Henry Sumlin ("Plaintiff") individually and on behalf of all others similarly situated, will and do hereby move this Court for entry of an Order:

1.      Preliminarily certifying the classes for purposes of Settlement;

2.      Preliminarily appointing Plaintiff Henry Sumlin as Class Representative for purposes of settlement;

3.      Preliminarily appointing Craig J. Ackermann, Esq. of Ackermann & Tilajef, P.C., Jonathan Melmed, Esq. of Melmed Law Group P.C., and David S. Winston of Winston Law Group, P.C. as Class Counsel for purposes of settlement;

4.      Preliminarily approving the settlement as fair, adequate, and reasonable, based upon the terms set forth in the Parties' Joint Stipulation of Partial Settlement and Release of Claims ("Settlement Agreement"), including payment by BNSF Railway Company ("BNSF" or "Defendant") of the non-reversionary Gross Settlement Amount ("GSA") of $675,000 for a class of approximately 3,500 current and former employees of BNSF in California who received incomplete wage statements and/or late final paychecks;

5.      Preliminarily approving Service Award of $7,500 for the named Plaintiff Henry Sumlin from the GSA in recognition of his significant service to the Settlement Class;

6.      Preliminarily approving Plaintiff's Counsel's request for up to one third of the GSA as attorneys' fees (i.e., up to $225,500), plus reimbursement of actual litigation costs up to $15,000;

7.      Preliminary approving a payment of PAGA penalties of $20,000, including payment to the Labor and Workforce Development Agency for its share of penalties pursuant to PAGA in an amount of $15,000;

8.      Appointing Rust Consulting, Inc. as the third-party Settlement Administrator for mailing notices and for settlement administration, and approving that $20,000 be deducted from the GSA for the costs of settlement administration; and

9.      Approving the proposed Class Notice and Share Form and ordering they be disseminated to the classes as provided in the Settlement Agreement.

This motion is based upon the supporting Memorandum of Points and Authorities, the Declarations of Craig J. Ackermann, Jonathan Melmed, David S. Winston, and Henry Sumlin, the Settlement Agreement, the Class Notice and Share Form, and the other papers amd exhibits filed herewith.

Dated: January 15, 2018                 Respectfully submitted,
                                        ACKERMANN & TILAJEF, P.C.
                                        MELMED LAW GROUP P.C.
                                        WINSTON LAW GROUP, P.C.

                                By:     _/s/ Craig J. Ackermann_____
                                        Craig J. Ackermann, Esq.
                                        Jonathan Melmed, Esq.
                                        David S. Winston, Esq.

                                        Attorneys for Plaintiff and the Class

# TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................... 1

II.     BACKGROUND ........................................................................................ 2

        A.    General Background Information About Defendant and Plaintiff ................ 2

        B.    Procedural History and Background to the Parties' Pre-Suit Tolling
              Agreement, Informal Discovery Efforts Pre-Mediation ............................... 3

        C.    The Parties' Mediation Efforts and Settlement ........................................... 4

III.    SUMMARY OF THE PROPOSED SETTLEMENT ................................... 4

IV.     THE COURT SHOULD APPROVE THE SETTLEMENT ......................... 7

        A.    The Settlement Class Satisfies Fed. R. Civ. P. 23(a) and (b) ...................... 8

        (1)   The Class is Sufficiently Numerous ............................................................ 8

        (2)   Plaintiff's Claims Raise Common Legal and Factual Questions .................. 8

        (3)   Plaintiff's Claims are Typical of the Class ................................................. 9

        (4)   Plaintiff and His Counsel Will and Have Adequately Represented the
              Class .......................................................................................................... 10

        (5)   Plaintiff's Claims Raise Predominating Factual and Legal Issues ............. 11

        B.    The Settlement is Fair, Reasonable, and Adequate ................................... 12

        (1)   The Presumption of Fairness Applies Because the Settlement, Which
              Was Negotiated at Arms' Length, Is Recommended by Class Counsel ....... 12

        (2)   Plaintiff's Claims and Estimated Damages ................................................ 14

        (3)   Defendant's Defenses ................................................................................ 17

        (4)   The Parties Investigated this Matter to Allow Counsel and this Court
              to Conclude that the Settlement is Fair and Reasonable ............................. 21

        (5)   The Proposed Class Notice is Adequate .................................................... 22

        C.    Requested Service Award Is Reasonable .................................................. 23

        D.    Requested Attorneys' Fees and Costs Are Reasonable ............................. 24

iv

V.   CONCLUSION.................................................................................................25

1

# TABLE OF AUTHORITIES

**Cases**

*Churchill Village, L.L.C. v. Gen. Elec.*,
   361 F.3d 566 (9th Cir. 2004) ....................................................................... 12

*Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), aff'd, 661 F.2d 939 (9th Cir. 1981) .................................................................................................................... 13

*In re Syncor ERISA Litig*.,
   516 F.3d 1095 (9th Cir. 2008) ..................................................................... 12

Lab. Code § 2699(e) ............................................................................................ 16

*Lewis v. Starbucks Corp*., No. 2:07-cv-00490-MCE-DAD, 2008 WL 4196690, at *6 (E.D. Cal. Sept. 11, 2008) .................................................................................................................... 21

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir., 1998)................ 21

*Mamika v. Barca*, 68 Cal.App.4th 487 (1998)................................................... 15

*Mendoza v. Tucson School Dist. No. 1*,
   623 F.2d 1338, 1351 (9th Cir. 1980) ........................................................... 23

*Officers for Justice v. Civil Serv. Comm'n*,
   688 F.2d 615 (9th Cir. 1982) ....................................................................... 12

*Officers for Justice*, 688 F.2d at 628 .................................................................. 21

*Oman vs. Delta Air Lines, Inc.* 2017 U.S. Dist. LEXIS 2913 (N.D. Cal. Jan. 6, 2017) ........................ 18

*Ortiz v. Fibreboard Corp*., 527 U.S. 815, 852 (1999) ...................................... 13

*Romero v. Producers Dairy Foods, Inc.*, No. 1:05cv0484 DLB,  2007 WL 3492841, at *4 (E.D. Cal. Nov. 14, 2007) ........................................................................................................... 24

*Singer v. Becton Dickinson and Co*., No. 08-cv-821-IEG (BLM), 2010 WL 2196104, at * 8 (S.D. Cal. June 1, 2010) .............................................................................................................. 24

*Stuart v. RadioShack Corp*., No. C-07-4499 EMC, 2010 WL 3155645 (N.D. Cal. Aug. 9, 2010).......... 24

*Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 493 (E.D. Cal. 2010)................................... 23

*West v. Circle K Stores, Inc*., No. CIV. S-04-0438 WBS GGH, 2006 U.S. Dist. LEXIS 76558, at *28 (E.D. Cal. Oct. 19, 2006) ................................................................................................. 24

*Willner v. Manpower Inc.* 35 F. Supp. 3d 1116, 1136 (N.D. Cal. 2014) ............ 20

*Wren v. RGIS Inventory Specialists*,
   No. C–06–05778 JCS, 2011 WL 1230826 (N.D. Cal. Apr. 1, 2011) ................ 12

**Statutes**

Cal. Labor Code § 203 ...................................................................................15, 16, 20

Cal Labor Code § 226 .................................................................9, 14, 15, 16, 18, 19, 20

Cal Labor Code § 2698 et seq………………………………………………………..7, 16, 19

**Rules**
Federal Rule of Civil Procedure 23…………………………...2, 7, 8, 9, 10, 11, 12, 22, 23

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Pursuant to Rule 23(e), this motion seeks preliminary approval of a wage-and-hour class action settlement between Plaintiff Henry Sumlin ("Plaintiff") and Defendant BNSF Railway Company ("Defendant" or "BNSF") for approximately 3,500 current and former employees of BNSF in California who received incomplete wage statements and/or late final paychecks in the non-reversionary Gross Settlement Amount ("GSA") of $675,000. Plaintiff seeks to represent two settlement classes: (1) Plaintiff and approximately 3,500 current and former employees of BNSF who (a) had California taxes withheld from their pay, and (b) who received one or more wage statements from BNSF from January 31, 2016 through the date of preliminary approval of this settlement ("the Wage Statement Class"); and (2) All former employees of Defendant who (a) had California taxes withheld from their pay, (b) who were terminated or resigned while working at a location in California, (c) whose employment with BNSF ended from April 4, 2014 through the present, and (d) who received their last paycheck from BNSF either (1) after their last date of employment if they were terminated or gave 72 hours of notice of the end of their employment or (2) if they resigned, more than 72 hours after their last date of employment with BNSF ("Section 203 Class") ("Settlement Class" or "Class").

Because the settlement is fair and reasonable, was negotiated at arm's length between counsel following extensive informal discovery, was reached after attendance at two pre-suit mediations, and subsequent direct negotiations, it should be preliminarily approved. Subject to court approval, the Net Settlement Amount of approximately $392,500, will be distributed to Class Members who do not opt-out, as follows:

| Gross Settlement Amount | $675,000.00 |
|---|---|
| Attorneys' Fees (1/3 of the GSA) | ($225,000.00) |
| Litigation Costs | ($15,000.00) |
| Settlement Administration Costs | ($20,000.00) |
| Service Award to Class Representative | ($7,500.00) |
| PAGA payment to the LWDA | ($15,000.00) |
| Net Settlement Amount | $392,500.00 |

Through this motion, Plaintiff requests that the Court enter an order: (1) conditionally certifying the Settlement Class under Federal Rule of Civil Procedure 23(b)(3) and 23(e) for settlement purposes only and preliminarily approving the settlement; (2) approving the proposed Class Notice and Share Form to be distributed to Class Members pursuant to the Settlement Agreement[1]; (3) appointing Rust Consulting, Inc. as the Settlement Administrator; and (4) scheduling a hearing for final approval.

## II.   BACKGROUND

### A. General Background Information About Defendant and Plaintiff

Defendant BNSF Railway Company is a Delaware corporation headquartered in Fort Worth, Texas.[2] Defendant is one of the largest railway companies in the United States, operating trains on 32,500 route miles in 28 states. (*Id*).  Defendant employs over 41,000 employees across the country, operates 8,000 locomotives and employs in California approximately 1,000 employees at any one time. (*Id). Plaintiff Sumlin is a* California resident who was formerly employed by BNSF as a non-exempt conductor. (CJA Decl., ¶ 16.a-c.  Defendant issued itemized wage statements to all of its California employees that did not include the correct legal address for the entity that is the employer. In addition, Plaintiff alleges BNSF failed to include all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate, the number of piece-rate units earned and any applicable piece rates, the total hours worked, the gross wages earned, and the net wages earned. (CJA Decl., ¶ 16.d)

Plaintiff and the proposed Section 203 Class did not receive all wages owed, including wages and vacation pay, at the time of their termination or within seventy-two (72) hours of their resignation. However, members of the Section 203 Penalty Class did ultimately receive all wages owed belatedly with the exception of the disputed wages

---

[1] The Notice of Proposed Class Action Settlement and Share Form are attached to the Settlement Agreement as Exhibits 1 and 2, respectively. (*See,* Declaration of Craig J. Ackermann in Support of Plaintiff's Motion for Order Granting Preliminary Approval of Class Action Settlement ("CJA Decl."), Exhibits 1 and 2.).

[2] *See* http://corporateofficehq.com/bnsf-railway-corporate-office/.

related to Defendant BNSF's alleged failure to provide rest period premiums to its piece-rate employees.[3] (CJA Decl., ¶ 16.3)

**B. <u>Procedural History and Background to the Parties' Pre-Suit Tolling Agreement, Informal Discovery Efforts Pre-Mediation</u>**

On January 31, 2017, Plaintiff filed a PAGA Notice with the LWDA ("PAGA Notice") asserting various class and representative claims against BNSF, including claims that BNSF had issued incomplete or inaccurate wage statements to its California employees and had failed to timely pay for all wages due upon termination. (CJA Decl., ¶ 17). Shortly after serving the PAGA Notice on Defendant as required by PAGA, the Parties entered into a tolling agreement, agreed to participate in a mediation with respected Mediator Gig Kyriacou on August 28, 2017, and engaged in significant informal discovery and culminating in the production of hundreds of pages of documents and extensive information about BNSF's employment policies and practices in California. (*Id*.).

In preparation for the first mediation, Defendant provided the following documents and information: (1) a detailed letter setting forth Defendant's anticipated legal positions to Plaintiff's claims, (2) the total number of Class Members and the total number of Class Members in the various subclasses, (3) Defendant's compensation policies and other policies applicable to the Class, (4) the total number of wage statements issues to the Class during the PAGA Period and wage statement claims, (5) the total days worked by all Class members in California during the Class Period, (6) Class Members' average shift length, (7) information about the amount of wages paid to the Class, (8) the percentage of days worked by class members in California versus outside California; (9) the percentage of days worked by nonresidents in California versus outside California during the Class Period and information about the amount of time spent on each route in California, (10) the applicable collective bargaining agreements (the "CBAs"), (11) Plaintiff's personnel

---

[3] BNSF's piece-rate employees also earned hourly and overtime pay for certain specified tasks that did not include any pay associated with rest periods.

files, and (12) samples of itemized wage statements issued by Defendants to Settlement Class Members. (CJA Decl., ¶ 18).

### C. **The Parties' Mediation Efforts and Settlement**

On August 29, 2017, the Parties participated in a full-day mediation with renowned wage and hour class action mediator Gig Kyriacou serving as the neutral. (CJA Decl., ¶ 19). The settlement negotiations at the mediation were at arm's length and non-collusive. (*Id*.).   After a full-day mediation, the Parties were unable to reach an agreement on a class-wide settlement. (*Id*.).

In a further attempt to resolve the case, the Parties participated in a second full-day mediation with Gig Kyriacou on September 26, 2017. (CJA Decl., ¶ 20). Although the Parties were unable to reach an agreement on a class-wide settlement at the mediation, the Parties continued discussing possible settlement proposals in the weeks following the mediation culminating in the settlement now pending before the Court. (*Id*.).

## III. **SUMMARY OF THE PROPOSED SETTLEMENT**

Under the terms of the Settlement Agreement ("S.A.") Defendant is discharged of some of the claims asserted in the lawsuit, specifically, those asserted for inaccurate wage statements, PAGA penalties for wage statements and 203 penalties in exchange for Defendant's agreement to pay the Gross Settlement Amount of $675,000. The GSA includes (1) the fees and expenses of the Settlement Administrator, not to exceed $20,000 (S.A., ¶ VII.1.a); (2) Plaintiff Sumlin's proposed Service Award of $7,500 (Id., ¶ VII.1.c); (3) attorneys' fees of up to $225,000 (up to one third of the Settlement Amount)[4] (S.A., ¶ VII.1.b); (4) litigation expenses and costs of up to $15,000 (*Id*., ¶ VII.1.b*)*; and (5) a payment to the LWDA for their portion of the PAGA penalties in the amount of $15,000 as its share of the settlement for civil penalties pursuant to PAGA (the

---

[4] Plaintiff's Counsel maintain that the attorneys' fees and litigation costs sought are reasonable and appropriate. (CJA Decl., ¶¶ 46-48). Plaintiff's Counsel estimate that the current amount of attorneys' fees incurred on behalf of the class as of the time of the filing of this Motion to be at least $275,900.10. (CJA Decl., ¶ 47; Decl. of David Winston, ¶ 14; Decl. of Jonathan Melmed, ¶ 12).

$5,000 of PAGA penalties allocated to the aggrieved employees are included in the Net Settlement Amount). (*Id*., ¶ VII.1.d). The remaining amount, an estimated $392,500 (the "Net Settlement Amount") will be distributed to all Class Members who do not timely opt-out. (*Id*. ¶ VII.3).

Defendant also agrees that, prior to September 1, 2018, Defendant shall make changes to its wage statements by providing its employees who work in California with wage statements that comply with Labor Code section 226(a). (Id. ¶ IV.8).

Individual Settlement Amounts to be paid to Settlement Class Participants shall be paid from the Net Settlement Amount. The portion of the Net Settlement Amount payable to each Settlement Class Participant will be calculated as follows: First, each Section 203 Class member shall receive $250 from the Net Settlement Amount for their late received wages (the "Waiting Time Penalty Amount").[5] The Settlement Administrator shall then divide the remainder of the Net Settlement Amount by the total number of wage statements issued to Settlement Class Members during the Settlement Class Period, in order to determine the amount each Settlement Class Member is entitled to for each pay period he was employed by Defendant (the "Wage Statement Amount"). The Settlement Administrator will multiply the Wage Statement Amount by the total number of wage statements issued to each Settlement Class Member during the Settlement Class Period to arrive at the remainder of the Individual Settlement Amount for that Settlement Class Member. (*Id*., ¶ VII.3). This is a non-reversionary settlement and each Class Member who does not opt-out will receive a settlement payment. (*Id*.)

Within 60 days after entry by the Court of its Order of Preliminary Approval and entry of an agreed protective order, Defendant shall provide the Settlement Administrator and Settlement Class Counsel with an updated list of Settlement Class Members containing names, last four digits of social security numbers, dates of employment and frequency of wage statement issuance (or the total number of wage statements issued to

---

[5] The Parties estimate there are approximately 300 total Section 203 Class members. (CJA Decl., ¶ 16.f).

each Settlement Class Member), last-known addresses, and phone numbers, if available (the "Database"). In addition, Defendant will identify all former employees in the Section 203 Class for the Settlement Administrator as part of the Database or in a separate spreadsheet. (*Id.*, ¶ VI.2). Within 28 days following the Preliminary Approval Date and following the entry of an agreed protective order, the Settlement Administrator shall determine the exact number of individuals in the Section 203 Penalty Class, each of whom shall be eligible for a flat payment of $250 from the Net Settlement Amount. The Settlement Administrator shall also identify the exact number of wage statements issued to each Settlement Class Member during the Settlement Class Period, populate the Settlement Class Notice and Share Form for each accordingly, including a box indicating whether the Settlement Class Member is part of the Section 203 Penalty Class, and send each Settlement Class Member the Settlement Class Notice and Share Form via first-class, United States mail. (*Id.*, ¶ VI.2; Exs. 1 and 2). The Share Form will inform each Settlement Class Member of his/her estimated share of the settlement, and dates of employment, as well as the number of wage statements he/she received from Defendant during the Settlement Class Period. (Id., Exh. 2).

The Notice shall provide that Class Members who wish to opt-out of the Settlement must send a written notice to the Settlement Administrator requesting to opt-out of the Class within 45 days of the Notice mailing date (the "Response Deadline"). (Id., ¶ VI.3). Any Class Member who timely requests to opt-out will not be entitled to receive a payment and will not be bound by the Class Release in the Settlement or have any right to object, appeal, or comment thereon. Id. Any Class Member may object to the Settlement by filing his or her objections with the Settlement Administrator within 45 days of the Notice mailing date.  (Id., ¶ VI.4). If a Class Member objects to the Settlement, the Class Member will remain a member of the Class and if the Court approves the Settlement, the Class Member will be bound by the terms of the Settlement in the same way and to the same extent as a Class Member who does not object.  Id.

In addition, Class Members may dispute information listed on their Share Forms

about their wage statements received worked during the Class Period (or their weeks worked or Section 203 eligibility) by submitting information to the Settlement Administrator within 45-days of the Notice mailing date. (Id., ¶ VI.2). The Administrator will jointly work with Plaintiff and Defendant to resolve the dispute in good faith. Id. In the event that there is a discrepancy between a Settlement Class Member and the Defendant's business records, the business records shall control. *Id*.

The release contemplated by the Settlement Agreement corresponds to some of the claims pleaded in the complaint for the Class Period defined as the period from April 4, 2014 to September 1, 2018. (Id., ¶ I.31).[6]

Since all payments here are for penalties associated with Labor Code sections 226, 203 and 2698, the parties agree that 100% of each Individual Settlement Amount shall constitute penalties (and each Settlement Class Participant will be issued an IRS Form 1099 by the Settlement Administrator for such payment to him or her). (Id., ¶ IV.4).

## IV.    THE COURT SHOULD APPROVE THE SETTLEMENT

Pursuant to FRCP, Rule 23, "[t]he claims … of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e)(1)(A). Federal Rule of Civil Procedure 23(e) requires that class action settlements satisfy two primary prerequisites before a court may grant certification for purposes of preliminary approval: (1) that the settlement class meets the requirements for class certification if it has not yet been certified (Fed. R. Civ. P. 23(a) and (b)); *Hanlon v.*

---

[6] The Settlement Agreement defines the "Released Claims" as follows: "all claims and causes of action asserted in the Action for Defendant's (1) failure to provide complete/accurate wage statements in violation of California Labor Code sections 226 and 226.2; (2); Waiting Time Penalties in violation of Labor Code sections 201-203; and (3) PAGA penalties based on the underlying wage statement violations pursuant to Labor Code sections 2698-2699.5 and 226.3, as well as any other related Claims that have been, or could have been, raised regarding or relating to the adequacy of Defendant's wage statements or waiting time penalties under California law from the beginning of the Class Period through September 1, 2018 against Defendant BNSF Railway Company and the Released Parties." (Settlement Agreement., ¶ I.20). The Class Members will be determined for the period for April 4, 2014 through the entry of preliminary approval. (S.A., ¶ I.4).

7

*Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)); and (2) that the settlement is fair, reasonable, and adequate (Fed. R. Civ. P. 23(e)(2)).

### A.   The Settlement Class Satisfies Fed. R. Civ. P. 23(a) and (b)

To certify a class, Plaintiff must show that the proposed class meets the requirements of Rule 23(a) and at least one subsection of Rule 23(b). *Berger v. Home Depot U.S.A., Inc.*, 741 F.3d 1061, 1067 (9th Cir. 2014).  Under Rule 23(a), a class may be certified if (1) the class is so numerous that joinder of all members is impracticable (numerosity), (2) questions of law or fact exist that are common to the class (commonality), (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class (typicality), and (4) the representative parties will fairly and adequately protect the interests of the class (adequacy of representation). *See* Fed.R.Civ.P. 23(a).  If the requirements of Rule 23(a) are all met, a class can be certified under Rule 23(b)(3) if common issues of law and fact predominate and a class action is superior to other available means of adjudication. Fed.R.Civ.P. 23(b)(3).

### (1) The Class is Sufficiently Numerous

With approximately 3,500 Class Members in the Wage Statement Class and 300 in the Section 203 Class, the Settlement Classes here satisfy the numerosity requirement. (CJA Decl., ¶ 16.h, 37).; *see also In re Cooper Cos. Inc. Sec. Litig.*, 254 F.R.D. 628, 634 (C.D. Cal. 2009) ("… numerosity is presumed where the plaintiff class contains forty or more members.").

### (2) Plaintiff's Claims Raise Common Legal and Factual Questions

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed.R.Civ.P. 23(a)(2). "Commonality requires that the plaintiff demonstrate that the class members have suffered the same injury" *Wal-Mart Stores v. Dukes*, 131 S.Ct. 2541, 2551 (2011). Rule 23(a)(2) requires "questions of law or fact common to the class."  The requirements of Rule 23(a)(2) have historically "been construed permissively," and "[a]ll questions of fact and law need not be common to satisfy the rule." *Hanlon v. Chrysler*

*Corp.,* 150 F.3d 1011, 1019 (9th Cir. 1998). Indeed, "[e]ven a single [common] question will satisfy the Rule 23(a)(2) inquiry." *Dukes,* 131 S.Ct at 2556 (internal citation omitted). The commonality element is satisfied here.

In this case, there are common legal and factual question as to whether (1) Defendant issued itemized wage statements do not accurately indicate the total amount of gross wages earned, the total hours worked, the number of piece-rate units earned and/or any applicable piece rates, the total amount of net wages earned, the proper address of the legal entity that is the employer, and all applicably hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee and/or at the correct rate in violation of Labor Code § 226(a) and (2) Defendant failed to pay members of the Section 203 Class on a timely basis, or at all, for all wages due them upon their separation of employment, including vacation pay.

A challenge to a uniform unlawful policy supports a finding of commonality even if it affects different class members differently. Additionally, Courts have found that "differences in the amount of an individual class member's damages do not defeat class certification." *See, Schulz v. QualxServ, LLC,* No. 09–cv–0017–AJB, 2012 WL 1439066, at *3 (S.D. Cal. Apr. 26, 2012) (Plaintiffs meet commonality "because they challenge uniform policies and systemic practices that apply to this class of employees"); *Hopkins v. Stryker Sales Corp.*, 5:11-CV-02786-LHK, 2012 WL 1715091 *6 (N.D. Cal. May 14, 2012). "[C]lass treatment does not require that all class members have been equally affected by the challenged practices—it suffices that the issue of whether the practice itself was unlawful is common to all…. [T]he existence of individuality as to damages does not defeat class certification." *Williams*, 221 Cal. App. 4th 1353, 1370 (2013). "We have repeatedly confirmed … that the need for individualized findings as to the amount of damages does not defeat class certification." *Vaquero v. Ashley Furniture Indus., Inc*., 824 F.3d 1150, 1155 (9th Cir. 2016). Thus, commonality is satisfied.

### (3) **Plaintiff's Claims are Typical of the Class**

Rule 23(a)(3) requires the named plaintiff to show that his claims are "typical" of those of the class, which means that the named plaintiff must be a member of the class and must "possess the same interest and suffer the same injury as the class members." *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 156 (1982). Typicality is "satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability". *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010). Here, Plaintiff Sumlin's claims are typical of the Class because he was subject to Defendant's policy of issuing inaccurate wage statements, did not receive all wages due to him on the separation of his employment from Defendant, and he seeks penalties, for himself and the rest of the Class. Sumlin Decl., ¶ 2.[7]

### (4) Plaintiff and His Counsel Will and Have Adequately Represented the Class

Rule 23(a)(4) permits certification of a class action if "the representative parties will fairly and adequately protect the interests of the class." Representation is adequate if (1) the class representative and counsel do not have any conflict of interest with other class members, and (2) the representative plaintiff and counsel will prosecute the action vigorously on behalf of the class. *Staton*, 327 F.3d at 954.

Plaintiff Sumlin is adequate as a Class representative since he is committed to representing the interests of the Class, has no interests that are averse to members of the Class, and understands and accepted his duty to represent the best interests of the class. Sumlin Decl., ¶ 8. Plaintiff provided counsel with information which was crucial to the drafting of the class complaint and mediation brief, discussed settlement strategy with his counsel, spoke to other Class Members about their experiences working for Defendant, and attended both all-day mediations (travelling for more than 4 hours each direction to do so), all of which demonstrated his commitment to the Class. *Id*. Moreover, Plaintiff is represented by counsel experienced in the litigation of wage and hour class actions, who

---

[7] Plaintiff Lee was not timely for the penalty claims and did not receive his final paycheck on an untimely basis. (CJA Decl., ¶ 16.f). As a result, he is not a Settlement Class Representative for this partial class action settlement.

have no interests averse to Plaintiff or the Class, who have and will continue to vigorously prosecute this action on behalf of the Class alongside Plaintiff, and who have the financial resources to handle this case. CJA Decl., ¶¶ 4-13; Melmed Decl., ¶¶ 2-7; Winston Decl., ¶¶ 3-7.

### (5) Plaintiff's Claims Raise Predominating Factual and Legal Issues

Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members," in addition to a finding that the class device is "superior" to other available methods for fairly and efficiently adjudicating the controversy. *See* Fed. R. Civ. P. 23(b)(3). The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods Inc. v. Windsor*, 521 U.S. 591, 623-4 (1997). The Supreme Court has explained that this analysis may "entail some overlap with the merits of the plaintiff's underlying claim." *Amgen*, 133 S.Ct. at 1194.

Rule 23(b) also requires that class resolution must be superior to other available methods for the fair and efficient adjudication of the controversy. *Hanlon*, 150 F.3d at 1023 (quoting Rule 23(b)(3)). The four factors that courts examine are: (1) the interest of each class member in individually controlling the prosecution or defense of separate actions, (2) the extent and nature of any litigation concerning the controversy already commenced by or against the class, (3) the desirability of concentrating the litigation on claims in the particular forum, and (4) the difficulties likely to be encountered in the management of the class action. *Ridgeway*, 2014 W.L. 4477662 at *9.

Here, although each individual class members' potential claims are not insubstantial, many Class Members will have claims that would not be economical to litigate because of the disparity between their litigation costs and what they hope to recover. See *Judicial Joint Exec. Bd. of Culinary Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1164 (9th Cir. 2001). The Wage Statement Class also includes approximately 1,000 active employees who may be reluctant to file a lawsuit for fear of retaliation. *Perez v. Safety-Kleen Systems, Inc.*, 253 F.R.D. 508, 520 (N.D.Cal.

2008). Certifying a Settlement Class here will yield substantial benefits to the Court and the parties, and is superior to a series of individual litigations. Resolving the common issues will foster judicial economy by resolving approximately 3,500 cases at once, as opposed to in individual suits.  Finally, the manageability factor is not significant when a Settlement Class is sought to be certified, since there will be no trial, if the deal is approved.

### B.    The Settlement is Fair, Reasonable, and Adequate.

In deciding whether to approve a proposed class action settlement, the Court must find that the proposed settlement is "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2); *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). As noted, there is a presumption of fairness "if the settlement is recommended by class counsel after arm's-length bargaining." *Wren v. RGIS Inventory Specialists*, No. C–06–05778 JCS, 2011 WL 1230826, at \*6 (N.D. Cal. Apr. 1, 2011). There is also "a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008).

In exercising discretion to approve class action settlements, district courts regularly consider "(1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement." *Churchill Village, L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004), citing *Hanlon*, 150 F.3d at 1026.  Applying these factors to this case, the proposed settlement is fair, reasonable, and adequate.

### (1) The Presumption of Fairness Applies Because the Settlement, Which Was Negotiated at Arms' Length, Is Recommended by Class Counsel

Courts routinely presume a settlement is fair where it is reached through arms'-length bargaining. *See Hanlon*, 150 F.3d at 1027. As the United States Supreme Court

12

has held, "[o]ne may take a settlement amount as good evidence of the maximum available if one can assume that parties of equal knowledge and negotiating skill agreed upon the figure through arms- length bargaining…" *Ortiz v. Fibreboard Corp*., 527 U.S. 815, 852 (1999). Here, the Settlement was a product of adversarial litigation and negotiation between the parties. CJA Decl. ¶ 24.

Notably, the parties spent months pre-suit and prior to the mediations developing the factual record for this case, engaging in informal discovery and exchanges of documents and information, researching and analyzing Defendant's putative preemption defenses under the Federal Railway Safety Act, the Adamson Act, the Interstate Commerce Act ("ICA"), the dormant Commerce Clause, the Railway Labor Act ("RLA"), and *Hawaiian Airlines* preemption, drafting a forty (40) page supplemental preemption analysis, drafting detailed mediation briefs for two mediation sessions, all of which ensured both sides were fully informed about the strengths and weaknesses of their respective positions at the mediations and during subsequent settlement negotiations. CJA Decl., ¶¶ 17-20. The Parties and their counsel attended two (2) full-day mediation sessions before an experienced and well-respected mediator Gig Kyriacou, and the case was partially resolved when the parties, after the two full-day mediation sessions, continued settlement negotiations. *Id*. In addition, the parties are represented by skilled and experienced counsel with extensive backgrounds in complex litigation and experience litigating and settling similar wage and hour class actions. CJA Decl., ¶¶ 4-13; Melmed Decl., ¶¶ 2-7; Winston Decl., ¶¶ 3-7. The view of the attorneys actively conducting the litigation is entitled to significant weight in deciding whether to approve the settlement. *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981); *Kullar v. Foot Locker Retail, Inc.*, 168 Cal. App. 4th 116, 128 (2008) (court must take into account "the experience and view of counsel") (internal quotation and citation omitted). Plaintiff's counsel shares the view that this settlement is fair, adequate, and reasonable, in the best interests of Class Members, and should be preliminarily approved.  CJA Decl.  ¶ 38; Melmed Decl., ¶ 11; Winston Decl.,

13

¶ 8.

The Settlement represents is a fair compromise given the risks and uncertainties presented by continued litigation. CJA Decl. ¶ 23. Defendant asserted and would have continued to assert legal and factual grounds to defend against this action, including the possibility of federal preemption (on no less than five separate possible grounds), non-certification of certain claims, and factual and legal defenses on the merits.  Id., ¶¶ 26-34

Moreover, continued litigation would be costly, time consuming, and uncertain in outcome. By contrast, this Settlement ensures timely relief and substantial recovery of penalties Plaintiff contends is owed to the Class. Id., ¶ 38.

### (2) Plaintiff's Claims and Estimated Damages

#### Wage Statement Claim

Labor Code section 226(a) states, in relevant part: (a) Every employer shall, semimonthly or at the time of each payment of wages, furnish each of his or her employees . . . an accurate itemized statement in writing showing . . . (1) gross wages earned; (2) total hours worked…(3) the number of piece-rate units earned and any applicable piece rate…(5) net wages earned…(8) the name and address of the legal entity that is the employer…and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee.

Labor Code § 226(e) allows "[a]n employee suffering injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a)…the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000), and…an award of costs and reasonable attorneys' fees." "A claim for damages under Section 226(e) requires a showing of three elements: (1) a violation of Section 226(a); (2) that is "knowing and intentional"; and (3) a resulting injury." *See Garnett v. ADT LLC* 139 F. Supp. 3d 1121, 1131 (E.D. Cal. Oct. 6, 2015). Section 226(e), as amended on January 1, 2013, provides that an "injury" occurs when an employer violates

14

Section 226(a) and "the employee cannot promptly and easily determine from the wage statement alone one or more of the items of information provided in the statute. Lab. Code § 226(e)(2)(B).

Defendant pays Class Members on a semimonthly basis for work performed during the previous two-week period. Defendant also provided wage statement documents to Class Members. According to information supplied by Defendant, Defendant issued approximately 39,600 wage statements during the Class Period. CJA Decl. ¶ 16.g.

Defendant's wage statements are deficient in various respects as follows: (1) the wage statements do not show the total hours worked (for Class Members paid per trip); (2) the wage statements do not include the number of piece-rate units earned any applicable piece rate; (3) the wage statements do not include all applicable hourly rates in effect during the pay period and corresponding number of hours worked at each hourly rate by the employee; (4) the wage statements do not include its correct address for the legal entity; (5) the wage statements do not accurately indicate Defendant's legal address (for all Class Members); (6) the wage statements do not accurately indicate the gross wages earned; and (7) the wage statements do not accurately indicate the net wages earned. CJA Decl., ¶ 16.d.

Based upon information provided by Defendant in discovery and as part of its initial disclosures in this case, Plaintiff determined that there were 3,500 initial violations within the meaning of Labor Code § 226(e) and 36,100 subsequent violations. As such, Plaintiff determined the maximum exposure of the Labor Code § 226(e) claims to be $3,785,000.00 = (($50 x 3,500 initial violations) + ($100 x 36,100 subsequent violations)). CJA Decl., ¶ 22.a.

### Waiting Time Penalties

Labor Code section 203 provides that "if an employer willfully fails to pay . . . any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty . . ." for up to 30 days.  (Lab. Code § 203; *see also Mamika v. Barca* (1998) 68 Cal.App.4th 487.).

15

Defendant has indicated that there are approximately 300 members of the Section 203 Class. Plaintiff and members of the Section 203 Class who were not paid all wages owed at the time of their termination, within seventy-two hours of their resignation if they did not provide at least seventy-two (72) hours' notice, or at the time of resignation for employees who provided seventy-two (72) hours' notice as required by Labor Code sections 201, 202, and 203. Defendant stated that such late payments were sporadic however this point does not matter. Defendant indicated that accrued vacation pay was typically paid within five (5) to ten (10) days with the average being seven (7) days after separation of employment. CJA Decl., ¶ 16.h. As such, Plaintiff calculated damages for waiting time penalties as follows: 300 members of the Section 203 Class * 7 days * $144 per day = $302,400. CJA Decl., ¶ 22.b.

### PAGA Penalties

PAGA provides a penalty amount of $100 for each aggrieved employee per pay period for the initial violation, and $200 for each aggrieved employee per pay period for each subsequent violation, it also gives the Court discretion to award a lesser amount than the maximum penalty. (Lab. Code § 2699(e).) Also, if a civil penalty is provided in a specified amount by the Labor Code section on which a PAGA claim is predicated, the penalty amount from the underlying statute applies. (Id.). Given that Labor Code § 226(e) provides a penalty for wage statement violations in the amount of $50 for any initial violation and $100 for each subsequent violation, it is possible the Court would award the lesser penalty were this case to progress through trial. Further Labor Code § 226.3 provides for a penalty of $250 per employee. CJA Decl. ¶ 22.c.

However, uncertainty exists as to whether or not Plaintiff could recover the default PAGA penalty for a violation of Labor Code § 226(a), the $250 penalty proscribed by Labor Code § 226.3 or the default penalty under Labor Code § 226(e) in addition to any Labor Code § 226(a) penalties.[8] CJA Decl. ¶ 22.c.

---

[8] *See e.g. Finder v. Leprino Foods Co.*, No. 1:13-CV-2059 AWI-BAM, 2016 WL 3774269, at *5 (E.D. Cal. Jan. 8, 2016) (finding that "[w]hile Section 226(a) requires that employers provide an accurate wage statement, Section 226.3 only mandates a penalty

Based upon the foregoing and the California Court of appeals decision in *Lopez v. Friant & Assocs., LLC*, No. A148849, 2017 Cal. App. LEXIS 839, at *1 (Ct. App. Sep. 26, 2017), Plaintiff estimated the maximum PAGA penalty exposure to be between $875,000 (3,500 employees x $250) and $3,960,000 (39,600 pay periods *100 per violation). CJA Decl. ¶ 22.c.

### (3) **Defendant's Defenses**

Defendant asserted various significant defenses summarized below.

### *Preemption Defenses:*

Defendant contends that Plaintiff's wage statement claims are preempted under the Adamson Act, the Interstate Commerce Act ("ICA"), the dormant Commerce Clause, the Railway Labor Act ("RLA"), and/or other provisions of federal law. Firstly, Defendant argued that the Adamson Act, 49 U.S.C. § 28301 is the exclusive source or regulation of railroad wages. Furthermore, Defendant argued that the ICA is another barrier to Plaintiff's claims because the ICA "is among the most pervasive and comprehensive of federal regulatory schemes and has consequently presented recurring pre-emption questions from the time of its enactment." *Chicago & N.W. Transp. Co. v. Kalo Brick & Tile*, 450 U.S. 311, 318 (1981). Additionally, Defendant contended that the content of wage statements that are provided to railroad employees falls within the coverage of mandatory subjects of bargaining under the RLA, and therefore, under the reasoning of cases like *R.J. Corman R.R. v. Palmore*, 999 F.2d 149, 152-153 (6th Cir. 1993) (state law regulation railroad hours and wages is preempted by federal law); ("Without doubt, Congress has undertaken the regulation of almost all aspects of the railroad industry, including rates, safety, labor relations, and worker conditions. This lasting history of

---

for failure to provide any wage deduction statement or failure to keep records"; *accord Pelton v. Panda Rest. Group, Inc.,* No. CV 10-8458 (MANx)) 2011 U.S.Dist.LEXIS 52486, at *17 (C.D. Cal. May 3, 2011); *Fleming v. Covidien Inc.,* No. (OPX), 2011 WL 7563047, at *3, (C.D. Cal. Aug. 12, 2011); *York v. Starbucks Corporation,* No. CV 08-07919 GAF (PJWx)) 2012 WL 10890355 at *9 (C.D.Cal. Nov. 1, 2012); *cf Culley v. Lincare, Inc.* (E.D.Cal. 2017) 236 F.Supp.3d 1184, 1194 [PAGA default penalty did not apply to a claim for violation of § 226(a) because § 226.3 sets out a civil penalty for all violations of § 226.]

pervasive and uniquely-tailored congressional action indicates Congress' general intent that railroads should be regulated primarily on a national level through an integrated network of federal law"), is one of the subjects that Congress intended to leave to negotiation. Moreover, Defendant contended that the local benefit of itemized wage statement laws like Section 226 is outweighed by the burden that such laws would place on interstate transportation companies such as BNSF. *See, e.g., Ward v. United Airlines, Inc.*, No. C 15-2309, 2016 WL 3906077 (N.D. Cal. July 19, 2016) (application of Section 226(a) is barred by dormant Commerce Clause); *accord Oman vs. Delta Air Lines, Inc.* 2017 U.S. Dist. LEXIS 2913 (N.D. Cal. Jan. 6, 2017). CJA Decl. ¶ 27.

Plaintiff was confident that he would prevail on these claims because the U.S. Supreme Court held more than one-hundred (100) years ago the U.S. Supreme Court held in *Erie R. Co. v. Williams*, 233 U.S. 685 (1914) that railroads must observe state laws related to the payment of wages to railroad employees. In *Erie*, the court expressly considered "whether a regulation of the time and manner of payment by a railroad of its employees was within the competency of the State" and unequivocally held that a state could require cash payment of wages to employees at least twice a month. *Id.* at 700-701. In addition, Plaintiff was confident that this court would follow *Haralson v. United Airlines, Inc.*, 224 F. Supp. 3d 928, 934-38 (N.D. Cal. Dec. 12, 2016) since as in *Haralson* and unlike in the cases such as *Oman* and *Ward* the employees in the Class spent the majority of the pay period working in California. Accordingly, although the applicability of California's wage statement laws remains an unresolved issue, Plaintiff believed that he would prevail on these claims. Nevertheless, Plaintiff had to recognize that some risk existed that Defendant could establish that California's wage statement laws were preempted by federal law. CJA Decl. ¶ 28.

### Wage Order Defense:

Defendant contends that it is not required to provide the kind of itemized wage statements as Plaintiff claims. Defendant reasoned that even though Plaintiff relied on Labor Code § 226(a), which requires various items of information in any wage statement

provided to an employee, the statutory duty to provide wage statements is also address in § 7 of IWC Wage Order No. 9-2001, which clarifies that the duty to provide itemized wage statements does not apply to any "employees who have entered into a collective bargaining agreement under an in accordance with the provisions of the RLA, 45 U.S.C. Sections 151 et seq." IWC Wage Order No. 9-2001 at 1(E). Defendant believes this exception applies here as all of Defendant's employees are subject to one more collective bargaining agreements under the RLA. CJA Decl. ¶ 29.

However, Plaintiff believes and intended to argue that the statutory duty to provide accurate and complete itemized wage statements actually arises out of Labor Code § 226 and not applicable wage order and/or that the separation of powers doctrine prevented an executive agency from invalidating a law enacted by the legislature. The California Court of Appeal dealt with a similar situation where the employers compliance with the wage order resulted in the violation of the state's labor code in *California State Restaurant Assn. v. Whitlow*, 58 Cal. App. 3d 340, 346-347 (1976). In *Whitlow*, the appellate court found that a portion of the wage order that violated Labor Code § 450 was unenforceable and illegal. Accordingly, Plaintiff did not believe that Defendant's defense would prove viable. CJA Decl. ¶ 30.

Nevertheless, Plaintiff had to contend with the possibility that a court or jury might find that Defendant's conduct was not knowing and intentional due to the conflicting information provided by the Wage Order. If Defendant's conduct was found not to be knowing and intentional, then Defendant may have been limited to recovering PAGA penalties for violations of Labor Code § 226(a), which might have been worth at most $875,000 or even no PAGA penalties if only Labor Code § 226.3 applies to claims for violations of Labor Code § 226(a) under PAGA. *See Lopez v. Friant & Assocs., LLC* 15 Cal. App. 5th at fn. 10 (explaining that "if section 226.3 applies in this case, it appears the court would have the same authority as the Labor Commissioner to assess an award for civil penalties under section 2699, subdivision (e)(1) and section 226.3" which includes a two-part discretionary analysis about whether or not to award penalties) (*citing Heritage*

19

*Residential Care, Inc. v. DLSE*, 192 Cal.App.4th 75, 82 (2011) (§ 226.3 envisions a two-part analysis requiring mandatory consideration of whether violation was inadvertent followed by discretionary decision whether to penalize the violation). CJA Decl. ¶ 31.

### Wage Statement Defense:

Defendant contended that they were not liable for violations of Labor Code § 226(a) because the Labor Code only allows damages when an employee suffers "injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a)". Specifically, Defendant argued that Plaintiff and the Class suffered no injury because they did provide all of the information provided by Labor Code § 226(a) in hard copy statements as well as through electronic systems that employees are free to access at any time. *See In re Elec. Itemized Wage Statements*, 2006 Cal. DLSE LEXIS 1 (July 6, 2006) (electronic wage statements are permissible). As a result, Defendant argued that by providing the information in an electronic format, their conduct even if unlawful was not knowing and intentional. CJA Decl. ¶ 32.

Plaintiff was confident that he could establish that despite the fact that Defendant provided much of the information required by Labor Code § 226(a) in other formats, that Defendant was legally provided that information on each employee's wage statements. *See Willner v. Manpower Inc.* 35 F. Supp. 3d 1116, 1129 (N.D. Cal. 2014) (holding that an employer violated Lab. Code § 226(a)(6) and (8) even though the employer's "address appears on the checks attached to the statements and on the front of the envelopes containing the statements."). Nevertheless, Plaintiff recognized the possibility that when awarding penalties it is possible that the Court would have taken into consideration the other documents provided by Defendant to its employees electronically. CJA Decl. ¶ 33.

### Waiting Time Penalties Defense:

Defendant contended that they complied with California law requiring payment of final wages at termination and that any situations where they failed to do so would be outliers and not provide a basis for a class-wide claim. Furthermore, this suggests that their conduct lacked requisite willfulness required by Labor Code § 203. CJA Decl. ¶ 34.

20

In sum, the settlement amount, negotiated at arms'-length, is fair and reasonable in light of the strengths and weaknesses of Plaintiff's case and Defendant's defenses. Moreover, "it is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not . . . render the settlement inadequate or unfair" *Officers for Justice*, 688 F.2d at 628. Indeed, "the very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'" *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir., 1998).

### (4) <u>The Parties Investigated this Matter to Allow Counsel and this Court to Conclude that the Settlement is Fair and Reasonable.</u>

The parties engaged in a significant exchange of substantive information relating to Class Members' claims as detailed above. Based upon the record that was developed through this investigation and informal discovery Plaintiff's Counsel were able to realistically estimate class damages and assess the risks of further litigation. CJA Decl. ¶ 22. It was only after the parties investigated and evaluated the strengths and weaknesses of the case, attended two full-day mediations, and engaged in hard-fought settlement negotiations, that the settlement was reached. Id., ¶ 24. This litigation, therefore, has reached the stage where the parties have a clear view of the strengths and weaknesses of their cases sufficient to support the Settlement. See *Lewis v. Starbucks Corp*., No. 2:07-cv-00490-MCE-DAD, 2008 WL 4196690, at *6 (E.D. Cal. Sept. 11, 2008) ("approval of a class action settlement is proper as long as discovery allowed the parties to form a clear view of the strengths and weaknesses of their cases").

The estimated 3,500 Class Members will enjoy substantial monetary recovery amounting to a flat recovery of $250 per each member of the Section 203 Class and a payment of $8.02[9] for each wage statement Class Members were issued during the Class

---

[9] Net Settlement amount of $392,500 – $75,000 Waiting Time Penalty Payments (approximately 300 Section 203 Class Members * $250 payment for waiting time penalty payments) = $317,500 Net Settlement Amount available to pay wage statement claims. $317,500 / 39,600 wage statements during the Class Period = $8.02 per wage statement on a net basis and $90.71 per employee.

21

Period on a gross basis. *Id.*, ¶ 37. Such recovery is within the range of reasonableness, as it is similar to those found reasonable in similar cases. *See Raya v. Amazon,* Case No. 3:15-cv-02005 (N.D. Cal. Feb. 15, 2017) (approving a Class Action and PAGA settlement of wage statement claims that amounted to a net settlement of $1.05 per employee and $0.64 per wage statement; *Pelton vs. Panda Restaurant Group*, 2 :10-cv-08458 (C.D. Cal. Mar. 2012) (approving a Class Action and PAGA settlement of wage statement claims that amounted to a gross settlement of $80.00 per employee and $4.77 per wage statement); *McKenzie v. Fed. Express Corp.*, 2012 U.S. Dist. LEXIS 103666, at *2 (C.D.Cal. July 2, 2012) (approving a Class Action and PAGA settlement after the entry of summary judgment in favor of the plaintiff's on a PAGA wage statement of wage statement claim that amounted to a net settlement of $10.99 per wage statement); CJA Decl. ¶ 39. Notably, unlike all of the cases referenced above involving similar and/or significantly lower settlements, this case involves the possibility that Labor Code § 226 is preempted by federal law or that the Wage Order incorrectly advised the employer that they were not legally required to maintain pay records for "employees who have entered into a collective bargaining agreement under a CBA in accordance with the provisions of the Railway Labor Act, 45 U.S.C. Sections 151 et seq." Thus, not only is this settlement within the range of what's fair and reasonable in the instant, but it also compares even more favorably to cases where the defendant's possessed significantly weaker defenses. CJA Decl. ¶ 40.

### (5) The Proposed Class Notice is Adequate

Fed. R. Civ. P. 23 (c)(2)(B) provides that the Court must direct to class members the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must concisely and clearly state in plain, easily understood language: (1) The nature of the action; (2) the definition of the class certified; (3) the class claims, issues or defenses; (4) that a class member may enter an appearance through counsel if the member so desires; (5) that the Court will exclude from the class any member who requests exclusion, stating when and

how members may elect to be excluded; and (6) the binding effect of a class judgment on class members under Rule 23(c)(3). Fed. R. Civ. P. 23(c)(2)(B).

The content of the proposed Class Notice fully complies with due process and Fed. R. Civ. P. 23. The Class Notice provides specifics regarding the date, time, and place of the Final Approval Hearing, and informs Class Members that they may enter an appearance through counsel. The Notice informs Class Members how to exercise their rights and make informed decisions regarding the proposed Settlement Agreement, and tells them that if they do not request to be excluded, the judgment will be binding upon them. The Notice describes the terms of the Settlement Agreement, informs Class Members how individual recoveries will be determined, and provides an estimated settlement amount for each Class Member. The Proposed Class Notice is more than adequate to put Class Members on notice of the Settlement Agreement. *See, e.g., Mendoza v. Tucson School Dist. No. 1,* 623 F.2d 1338, 1351 (9th Cir. 1980) ("very general description of the… settlement" satisfies standards).

### C. Requested Service Award Is Reasonable.

Named plaintiffs "are eligible for reasonable incentive payments." *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003). Such awards "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958–59.

Plaintiff will request a service award in an amount of $7,500, to recognize his time and efforts on behalf of the Class, including time spent in meetings with Class Counsel, and his acceptance of the financial risk in pursuing this litigation. S.A. ¶ IV.1; CJA Decl. ¶¶ 41-44. The incentive award requested by the Plaintiff represents less than 1.1% of the Gross Settlement Amount in this case (i.e. $7,500 / $675,000 = 1.1%). The requested Service Award falls well within the range of incentive payments typically awarded to Class Representatives in similar class actions. *See Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 493 (E.D. Cal. 2010) (approving service awards in the amount of

$10,000 each from a $300,000 settlement fund in a wage/hour class action); *West v. Circle K Stores, Inc.*, No. CIV. S-04-0438 WBS GGH, 2006 U.S. Dist. LEXIS 76558, at *28 (E.D. Cal. Oct. 19, 2006) ("the court finds plaintiffs' enhancement payments of $15,000 each to be reasonable."). Thus, when examined in the context of the gross funds obtained on behalf of the Class as a result of Plaintiff's undertaking the role of Class Representative, the requested service award is proportionally modest, fair and reasonable.

### D.    Requested Attorneys' Fees and Costs Are Reasonable.

In addition, concurrent with final approval, Plaintiff's counsel will request a Class Counsel Fees Payment of up to $225,000.00 (*i.e.*, up to one third of the Settlement Amount) and Class Counsel Litigation Expenses Payment of up to $15,000. S.A. ¶ VI.1. The fee amount is fair and reasonable as a percentage of the fund obtained in wage-and-hour class actions in California. *See Stuart v. RadioShack Corp.*, No. C-07-4499 EMC, 2010 WL 3155645 (N.D. Cal. Aug. 9, 2010) (noting that a fee award of 1/3 of the settlement was "well within the range of percentages which courts have upheld as reasonable in other class action lawsuits."); *Singer v. Becton Dickinson and Co.*, No. 08-cv-821-IEG (BLM), 2010 WL 2196104, at * 8 (S.D. Cal. June 1, 2010) (approving fee award of 33.33% of the common fund); *Romero v. Producers Dairy Foods, Inc.*, No. 1:05cv0484 DLB,  2007 WL 3492841, at *4 (E.D. Cal. Nov. 14, 2007) (awarding fees of 1/3 of common fund in a wage and hour class action, noting: "[f]ee awards in class actions average around one-third of the recovery.").

The fees sought are reasonable in light of the result achieved for the Class, which amounts to a net award per Class Member of $8.02 per wage statement issued during the Class Period on a gross basis, a flat recovery of $250 per member of the Section 203 Class, and a change to Defendant's wage statement policies and practices. Furthermore, the amount recovered per wage statement for Class Members compares favorably with amounts deemed fair, adequate and reasonable in similar settlements. CJA Decl. ¶ 39.

Class Counsel will submit a Motion for Attorneys' Fees and Cost, with a complete briefing supporting the attorneys' fees request and a detailed summary of the time and

24

NOTICE OF MOTION AND MOTION ISO ORDER GRANTING PRELIMINARY APPROVAL FOR PARTIAL CLASS ACTION SETTLEMENT
CASE NO. EDCV 1702364-JFW (KKx)

costs incurred this case. Plaintiff's counsel have prepared and submitted herewith the attorneys' fees incurred to date as well as those estimated to be incurred through the completion of this matter. *Id.* ¶ 50.

A lodestar cross-check further confirms that the one third fees requested is reasonable. See *Vizcaino v. Microsoft Corp.*, F. 3d 1043, 1050 (9th Cir. 2002). As set forth in the declarations of counsel, Class Counsel's total lodestar to date is $273,170.10 and estimated to be higher at the conclusion of this matter. (CJA Decl., ¶ 47; Melmed Decl., ¶ 12; Winston Decl., ¶ 14). Therefore, Plaintiff's counsel's attorneys' fees of $225,000 represent only 82.4% of Plaintiff's counsel's total aggregated lodestar incurred and a negative multiplier of .824. While Plaintiff's counsel is not requesting a lodestar multiplier in the instant case, in similar cases, Plaintiff's Counsel has been awarded lodestar multipliers in the range of 1.6 and 1.7 for their class action work on behalf of employees. CJA Decl., ¶¶ 47-48.

Class Counsel Litigation Expenses Payment of up to $15,000 is also reasonable and based on necessary documented litigation expenses incurred on behalf of the instant case, and these expenses will be presented to the court, in detail in, Plaintiff's forthcoming Motion for Attorneys' Fees and Costs. Class Counsel has incurred $10,374.59 in litigation costs. Id. ¶ 49; Melmed Decl., ¶ 13.

## V.   **CONCLUSION**

For these reasons, Plaintiff's motion for preliminary approval of the parties' class action settlement should be granted.

Dated: January 15, 2018        ACKERMAN & TILAJEF, P.C.
                               MELMED LAW GROUP P.C.
                               WINSTON LAW GROUP, P.C.
                               */s/ Craig J. Ackermann*_____
                               Craig J. Ackermann, Esq.
                               Jonathan Melmed, Esq.
                               David S. Winston, Esq.
                               Co-Counsel for Plaintiff and the Class